## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE APPLICATION OF USA PURSUANT TO 18 U.S.C. 3512 FOR 2703(d) ORDER FOR THREE E-MAIL ACCOUNTS SERVICED BY OATH HOLDINGS INC. | ML No. 20-1332 <br><br> **Filed Under Seal** |

*Reference:*   DOJ Ref. # CRM-182-75203; Subject Accounts: khairyadamthug@yahoo.com, kjs2pac@yahoo.com, and khairyjs@yahoo.com

### APPLICATION OF THE UNITED STATES
### FOR AN ORDER PURSUANT TO 18 U.S.C. § 2703(d)

The United States of America, moving by and through its undersigned counsel, respectfully submits under seal this *ex parte* application for an Order, pursuant to 18 U.S.C. §§ 2703(d) and 3512(a), and the Instrument as contemplated by Article 3(2) of the Agreement on Mutual Legal Assistance between the United States of America and the European Union signed 25 June 2003, as to the application of the Treaty between the Government of the United States of America and the Government of the United Kingdom of Great Britain and Northern Ireland on Mutual Legal Assistance in Criminal Matters signed 6 January 1994, U.K.-U.S., Dec. 16, 2004, S. TREATY DOC. NO. 109-13 (2006) (hereinafter, the "Instrument"), to execute a request from the United Kingdom of Great Britain and Northern Ireland ("the United Kingdom"). The proposed Order would require Oath Holdings Inc. ("PROVIDER"), an electronic communication service and/or remote computing service provider located in Sunnyvale, California, to disclose certain records and other information pertaining to the PROVIDER accounts associated with khairyadamthug@yahoo.com, kjs2pac@yahoo.com, and khairyjs@yahoo.com, as set forth in Part I of Attachment A to the proposed Order, within ten days of receipt of the Order. The records and other information to be disclosed are described in Part II of Attachment A to the

proposed Order. In support of this application, the United States asserts:

## LEGAL BACKGROUND AND JURISDICTION

1.  PROVIDER is a provider of an electronic communication service, as defined in 18 U.S.C. § 2510(15), and/or a remote computing service, as defined in 18 U.S.C. § 2711(2). Accordingly, the United States may use a court order issued under § 2703(d) to require PROVIDER to disclose the items described in Part II of Attachment A. *See* 18 U.S.C. § 2703(c)(2) (Part II.A of Attachment A); 18 U.S.C. § 2703(c)(1) (Part II.B of Attachment A).

2.  Pursuant to the applicable treaty, this Court has jurisdiction to issue the proposed Order. *See* Instrument Annex art. 5(1) (authorizing courts to issue orders necessary to execute the request). In addition, this Court has jurisdiction to issue the proposed Order because it is "a court of competent jurisdiction," as defined in 18 U.S.C. § 2711. *See* 18 U.S.C. § 2703(d). Specifically, the Court "is acting on a request for foreign assistance pursuant to [18 U.S.C.] section 3512." 18 U.S.C. § 2711(3)(A)(iii); *see also* 18 U.S.C. § 3512(a)(2)(B) (court may issue "a warrant or order for contents of stored wire or electronic communications or for records related thereto, as provided under section 2703"); 18 U.S.C. § 3512(c)(3) ("application for execution of a request from a foreign authority under this section may be filed . . . in the District of Columbia").

3.  Section 3512 provides:

    > Upon application, duly authorized by an appropriate official of the Department of Justice, of an attorney for the Government, a Federal judge may issue such orders as may be necessary to execute a request from a foreign authority for assistance in the investigation or prosecution of criminal offenses, or in proceedings related to the prosecution of criminal offenses, including proceedings regarding forfeiture, sentencing, and restitution.

18 U.S.C. § 3512(a)(1). This application to execute the United Kingdom's request has been duly

authorized by an appropriate official of the Department of Justice, through the Criminal Division, Office of International Affairs,[1] which has authorized execution of the request and has delegated the undersigned to file this application. The undersigned has reviewed the request and has confirmed that it was submitted by authorities in the United Kingdom in connection with a criminal investigation and/or prosecution.

4.      A court order under § 2703(d) "shall issue only if the governmental entity offers specific and articulable facts showing that there are reasonable grounds to believe that . . . the records or other information sought, are relevant and material to an ongoing criminal investigation." 18 U.S.C. § 2703(d). Accordingly, the next section of this application sets forth specific and articulable facts showing that there are reasonable grounds to believe that the records and other information described in Part II of Attachment A are relevant and material to an ongoing criminal investigation.

## RELEVANT FACTS

5.      Authorities in the United Kingdom are prosecuting Khairi Saadallah ("Saadallah") for attempted murder and murder offenses, which occurred on June 20, 2020, in violation of the criminal law of the United Kingdom, specifically, Section 1(1) of the Criminal Attempts Act 1981 and the common law of the United Kingdom. A copy of the applicable laws is appended to this application. The United States, through the Office of International Affairs, received a request from the United Kingdom to provide the requested records to assist in the

---

[1] The Attorney General, through regulations and Department of Justice directives, has delegated to the Office of International Affairs the authority to serve as the "Central Authority" under treaties and executive agreements between the United States and other countries pertaining to mutual assistance in criminal matters. *See* 28 C.F.R. §§ 0.64-1, 0.64-4, and Appendix to Subpart K, Directive Nos. 81B and 81C (2018).

criminal investigation and/or prosecution. Under the Instrument, the United States is obligated to render assistance in response to the request.

6.      UK authorities are prosecuting Saadallah for three counts of murder and three counts of attempted murder. Specifically, on June 20, 2020, Saadallah attacked at least two groups of individuals without provocation in a park in Reading, the United Kingdom (the "attack"). In the span of approximately a minute, Saadallah stabbed several individuals with a knife. Three of the victims died as a result of their injuries.

**The Attack**

7.      Based on analysis of CCTV footage and statements provided by witnesses to and victims of the attack, UK authorities have established the following timeline of events leading up to the attack on June 20, 2020:

- On June 19, 2020, Saadallah purchased a knife and a pair of gloves.

- Shortly after 6:00 P.M. local time on June 20, 2020, Saadallah left his home and walked toward Forbury Gardens, a public park in Reading, the United Kingdom. As he approached the park, CCTV footage shows Saadallah purposefully damaging his mobile phone and discarding it along with the backpack he was carrying.

- Based on witness statements, after Saadallah entered the park he ran suddenly toward a group of seven males sitting in the grass. Without provocation and in rapid succession, Saadallah stabbed two of the males in the neck and the third in the back with a knife, ultimately causing the death of all three men. A fourth man also sustained serious injuries to his head. As other members of the group fled, Saadallah chased them. As he chased them, witnesses said that Saadallah said "Allahu Akbar," which translates from Arabic as "God is Greatest."

- Based on witness statements, Saadallah then attacked a second group of five people, stabbing two men in the group, causing serious injuries to both. Saadallah then discarded his knife and ran out of the park. Based on CCTV footage showing Saadallah entering and leaving the park, the entire attack lasted approximately less than a minute.
- After leaving the park, CCTV footage shows Saadallah returning to his backpack, deliberately cutting his right hand, and then walking briskly away from the park. A witness stated that as Saadallah walked past a bus driver, he shouted "Allahu Akbar" and "Victory on Infidels."

8. Saadallah was arrested shortly after the attack. During the arrest, Saadallah was heard asking God in Arabic whether he was pleased with his jihad. While in police custody, Saadallah also made the following statements:

- "I want to plead guilty for the jihad that I done and go to court tomorrow."
- "That shit that caused the reaction from yesterday, they started it."
- "Tell them I want to plead guilty to the jihad that I done and go to court tomorrow."
- "Those men I killed were wronguns, they deserved it."
- "They harassed me on Facebook, they got what was coming to them."
- "I'm going to paradise for the jihad what I did to them."
- "What happened yesterday, bombing Italy, Germany all of you will see I'm going to leave my name, I'm not afraid and I'm going to die, we are all going to go at the end of the war."

9. Subsequently during interviews with police between June 22, 2020 and June 26, 2020, Saadallah admitted to stabbing the victims, but said that he was not in control of himself at the time and further denied that the attack was for terrorist purposes. Rather, he claimed that he

was controlled by "the magic," stating, "I didn't want to kill them it was the magic." He also told the police that his sister told him "they" had been harassing her on Facebook and so he needed to use "the magic" to kill them. Prior to the attack, Saadallah was being seen for mental health issues.

**Saadallah's Background**

10. Saadallah immigrated to the United Kingdom from Libya in 2012. Prior to his immigration to the United Kingdom, based on records from the UK's Home Office Immigration Department as well as Saadallah's admissions to police, Saadallah fought with Ansar al Sharia, a terrorist organization as designated by the United Kingdom, during the Arab Spring uprising in 2011 and 2012 in Libya. In addition, the Home Office Immigration Department records and a copy of Saadallah's "membership" identification card posted by Saadallah's brother on Facebook, also show that Saadallah was a member of the February 17th Martyrs Brigade, an Islamist based militia in Libya. After his immigration to the United Kingdom, Saadallah was convicted and imprisoned at various times for criminal offenses between June 2014 and August 2019, including for possession of bladed articles. He was last released from incarceration on June 5, 2020.

**Saadallah's Use of Facebook**

11. UK authorities recovered the mobile phone Saadallah attempted to discard just before entering the park on June 20, 2020. In addition, UK authorities identified a witness ("Witness 1") who communicated extensively with Saadallah on Facebook since, at least, April 2012. Witness 1 allowed UK authorities to make copies of her communications with Saadallah on Facebook.

12. Based on an analysis of the recovered mobile phone as well as the Facebook communications provided by Witness 1, UK authorities identified the following four Facebook accounts used by Saadallah:

- https://www.facebook.com/khairy.jay.90 (associated with the ID number 100052074163700 and the vanity name "Khairi Jay");

- https://www.facebook.com/khairi.saadallah.9 (associated with the ID number 100022171453167 and the vanity name "Khairi Aymen");

- https://www.facebook.com/khairy.adamthug (associated with the ID number 100005921824671, the e-mail address khairyadamthug@yahoo.com, and the vanity name "Khairy Edgam Thug Thug"); and

- https://www.facebook.com/Guenstboy (associated with the ID number 10001344024951, the e-mail address kjs2pac@yahoo.com, and the vanity name "Khairy Thug").

13. Witness 1 communicated with Saadallah on the "Khairi Jay" account beginning on June 6, 2020 until the day of the attack. For instance, on June 6, 2020, Saadallah asks Witness 1 if she wants to play the "magic game" and further tells her not to "be afraid." Witness 1 declines his offer. On June 21, 2020, approximately five hours after the attack, Witness 1 sent Saadallah the following message: "Oh khairy please done' tell me you've done anything stupid. Get in touch please Xx."

14. Other than Saadallah's communications with Witness 1, Saadallah appears to have been actively using the "Khairi Jay" account up until the day of the attack. For instance, the data recovered from Saadallah's mobile device shows that he used this account to send a message on June 19, 2020, but then the message was deleted. In addition, from approximately June 13 to June 19, 2020, Saadallah also uses this account to research Facebook Groups about

7

buying a "cheap car," which UK authorities suspect may have been research into a possible "lone wolf" attack using a car.

15. Witness 1 also communicated with Saadallah on the "Khairi Aymen" account from, at least, September 2017 until May 21, 2020. Based on data recovered from Saadallah's mobile device, Saadallah also used the "Khairi Aymen" account on October 8, 2017 to post the following message, " . . . every weekend I'm locked up if not fight against the cop's fuck the public up with my evil level don't blaum [sic] me when i was 16 am solider in the rebels . . .". On October 12, 2017, Saadallah also posted an image of road sign on a building reading "ISIS Court." In addition, again based on data recovered from Saadallah's mobile device, Saadallah used this account again on July 12, 2018 stating, "and u know what else am not coming again going bk [sic] to army," after posting a message that says he will return to Libya.

16. Witness 1 communicated with Saadallah on the "Khairy Edgam Thug Thug" account from May 2013 until July 2013. Based on open source research, the "Khairy Edgam Thug Thug" account's current profile picture is an image of Saadallah wearing a scarf to mask some of his face and holding two assault rifles. The date that this particular image was posted is unknown.

17. Witness 1 communicated with Saadallah on the "Khairy Thug" account from April 2012 until May 2018.

18. UK authorities have also determined that Saadallah holds the Facebook account https://www.facebook.com/khairi.saadallah (associated with the ID number 100007646260900, the vanity name "Khairi Saadallah," and registered with the e-mail address khairyjs@yahoo.com). The "Khairi Saadallah" account was created on January 31, 2014 and

8

was still enabled as of June 2020. After the attack on June 20, 2020, several members of the public posted comments directed at Saadallah on this account in reaction to the attack.

19. Based on the analysis of Saadallah's mobile phone, UK authorities recovered cached images on the device that had been downloaded from Facebook. Some of these recovered images depicted soldiers of the February 17th Martyrs Brigade. However, these cached images could not be attributed to a certain date or to a certain Facebook account.

**The Prosecution**

20. The Facebook accounts outlined above are hosted by PROVIDER.

21. UK authorities anticipate that two issues will be particularly relevant during the prosecution of Saadallah: the extent of and impact of Saadallah's mental health issues and whether the murders were committed for a terrorist purpose. Under Section 30 of the Counter Terrorism Act 2008, a UK court must consider whether the offense has a "terrorist connection" for the purposes of sentencing a defendant. Under Section I of the Counter Terrorism Act 2008, in order to prove that an act was committed for a terrorist purpose, the prosecution must present evidence that shows the defendant's actions were: "(i) designed to influence the government or an international governmental organization or to intimidate the public or a section of the public and (ii) committed for the purpose of advancing a political, religious, racial or ideological cause."

22. The e-mail accounts khairyadamthug@yahoo.com, kjs2pac@yahoo.com, and khairyjs@yahoo.com are serviced by PROVIDER. As a result, UK authorities seek records from PROVIDER in an effort to further determine the nature and scope of Saadallah's criminal activities, including to determine whether Saadallah was using the above-referenced accounts during times relevant to the criminal investigation and prosecution and further attribute the

Facebook accounts to Saadallah.

## REQUEST FOR ORDER

23.     The facts set forth above show that there are reasonable grounds to believe that the records and other information described in Part II of Attachment A are relevant and material to an ongoing criminal investigation.  Specifically, these items will help authorities in the United Kingdom identify and locate the individual(s) who are responsible for the criminal activity under investigation, and to determine the nature and scope of that criminal activity.  Accordingly, the United States requests that PROVIDER be directed to produce all items described in Part II of Attachment A to the proposed Order within ten days of receipt of the Order.

24.     In this matter, the United States also requests that the instant Application and the Order be filed under seal.  The Court has the inherent power to seal court filings when appropriate, including the proposed Order.  *United States v. Hubbard*, 650 F.2d 293, 315-16 (D.C. Cir. 1980) (citing *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978)).  More particularly, the Court may seal the Application and Order to prevent serious jeopardy to an ongoing criminal investigation when such jeopardy creates a compelling governmental interest in confidentiality.  *See Washington Post v. Robinson*, 935 F.2d 282, 287-89 (D.C. Cir. 1991).  In addition, the Court is authorized to issue orders necessary for the execution of a foreign request, including an order to seal the instant Application and Order, to protect the confidentiality of the foreign criminal investigation.  *See* Instrument Annex art. 7(1) (obligating the United States to protect information when confidentiality is requested);18 U.S.C. § 3512(a). [2]  As explained

---

[2]  When enacting Section 3512, Congress anticipated that improved U.S. handling of foreign requests would insure reciprocity in response to U.S. requests for assistance in its criminal investigations.  *See, e.g.*, 155 CONG. REC. H10,093 (2009) (statement of Rep. Schiff).  Section 3512, which codified past practice in relation to the execution of foreign requests for evidence, naturally encompasses the longstanding practice of maintaining the confidentiality of the foreign investigation, where possible.  *See, e.g.*, *In re Letter of Request from the Government of France*, 139 F.R.D. 588, 592 (S.D.N.Y. 1991)

above, these documents discuss an ongoing criminal investigation pursuant to foreign law in the United Kingdom.  In addition, the information described in this application is not known to the public.  Public disclosure at this time may reveal the existence, scope, and/or direction of the United Kingdom's ongoing investigation and cause serious jeopardy to the investigation.  For these reasons, the United States has a compelling interest in confidentiality to justify sealing the Application and Order.

25.     In the Request, the United Kingdom requests that any records generated by PROVIDER be certified in a manner that would render them admissible in a potential court proceeding in the United Kingdom.  Under the law of the United Kingdom, records created in the usual and ordinary course of business of an entity located in a foreign jurisdiction are admissible, if they are accompanied by a certificate setting forth basic information about the records and the entity that generated the records.  A certificate conforming to the requirements is included as Attachment B to the proposed Order.  Accordingly, the United States requests that PROVIDER be directed to complete and provide the certificate included as Attachment B to the proposed Order along with the responsive records.

          Respectfully submitted,

          VAUGHN A. ARY
          DIRECTOR
          OFFICE OF INTERNATIONAL AFFAIRS
          OK Bar Number 12199

By: _____
          Martyna Pospieszalska
          Trial Attorney
          NY Bar Number 5018528
          Office of International Affairs
          Criminal Division, Department of Justice
          1301 New York Avenue, N.W., Suite 200
          Washington, D.C.  20530

---

(secrecy in executing foreign request is "essential to protect the French Court's criminal investigation").

(202) 598-8012 telephone
(202) 514-0080 facsimile
Martyna.Pospieszalska@usdoj.gov

**Relevant Provisions of the United Kingdom's Criminal Code and Common Law**

**Section 1 of the Criminal Attempts Act 1981 – Attempting to Commit an Offense**
   (1) If, with intent to commit an offense to which this section applies, a person does an act which is more than merely preparatory to the commission of the offense, he is guilty of attempting to commit the offense.

**Murder**

Murder is a common law offense in the United Kingdom.  The crime of murder is committed where a person of sound mind and discretion unlawfully kills any reasonable creature in being under the Queen's peace with intent to kill or cause grievous bodily harm.  In all cases of murder, the sentence is mandatory.  Offenders aged twenty-one or over must be sentenced to imprisonment for life.